UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHRISTINE WACKER,

        Plaintiff,

        v.                                     **DECISION AND ORDER**
                                                            18-CV-847S

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

        1.     Plaintiff Christine Wacker brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her applications for disability insurance benefits under Title II of the Act and supplemental security income under Title XVI of the Act. (Docket No. 1). The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

        2.     Plaintiff protectively filed her applications with the Social Security Administration on January 27, 2015. Plaintiff alleged disability due to hepatitis C, acute upper gastrointestinal hemorrhage, cirrhosis of the liver, and kidney failure, with an onset date of March 21, 2014. (R.[1] at 57-58.) Plaintiff's applications were denied, and Plaintiff thereafter requested a hearing before an administrative law judge ("ALJ"). On March 8, 2017, ALJ Rosanne Dummer held a videoconference hearing at which Plaintiff, represented by her attorney, appeared and testified. Vocational Expert Jane Beougher also appeared and testified by telephone. At the time of the hearing, Plaintiff was 55

---

[1] Citations to the underlying administrative record are designated as "R."

years old (R. at 38), with a twelfth-grade education and prior work experience as a customer service representative. (R. at 192.)

3.      The ALJ considered the case *de novo* and, on May 10, 2017, issued a written decision denying Plaintiff's applications for benefits. (R. at 11-26.) On June 12, 2018, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (R. at 1.) Plaintiff then filed the current action on August 2, 2018, challenging the Commissioner's final decision.[2]

4.      Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 10, 18.) Plaintiff filed a response on August 14, 2019 (Docket No. 19), at which time this Court took the motions under advisement without oral argument. For the reasons that follow, Plaintiff's motion is denied, and Defendant's motion is granted.

5.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the

---

[2] The ALJ's May 10, 2017 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

6. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

7. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

8. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or

> mental ability to do basic work activities.  If the claimant
> suffers such an impairment, the third inquiry is whether, based
> solely on medical evidence, the claimant has an impairment
> which is listed in Appendix 1 of the regulations.  If the claimant
> has such an impairment, the [Commissioner] will consider him
> disabled without considering vocational factors such as age,
> education, and work experience; the [Commissioner]
> presumes that a claimant who is afflicted with a "listed"
> impairment is unable to perform substantial gainful activity.
> Assuming the claimant does not have a listed impairment, the
> fourth inquiry is whether, despite the claimant's severe
> impairment, he has the residual functional capacity to perform
> his past work.  Finally, if the claimant is unable to perform his
> past work, the [Commissioner] then determines whether there
> is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

9. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step is divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

10. The ALJ analyzed Plaintiff's claim for benefits under the process set forth above.  At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since March 21, 2014. (R. at 13.)  At step two, the ALJ found that Plaintiff has the following severe impairments: history of cirrhosis of the liver; hepatitis C with history of

alcohol abuse; status post-March 2016 and March 2017 laparoscopic hernia surgeries; hypertension; obesity; and degenerative disc disease. Id. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 14.)

11. Next, the ALJ found that Plaintiff retains the residual functional capacity ("RFC") to perform a range of sedentary work, except that Plaintiff can

> lift/carry ten pounds occasionally and ten pounds frequently; sit about six of eight hours; and stand/walk about six of eight hours. She could occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. She should avoid work hazards (i.e., dangerous moving machinery and unprotected heights). She could perform frequent (no repetitive/continuous) manipulation with her hands. The claimant could read a computer screen, newspaper, book print, etc., but not very small print.

(R. at 14-15.)

12. At step four, the ALJ found that Plaintiff is able to perform her past relevant work as a customer service representative. (R. at 24.) Although the ALJ found that Plaintiff can perform her past relevant work, she continued through step five of the analysis. At step five, the ALJ found that there are also other jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. at 25.) Accordingly, the ALJ found that Plaintiff is not disabled. (R. at 26.)

13. Plaintiff argues that the ALJ's final determination is not supported by substantial evidence because (1) the ALJ improperly evaluated medical opinion evidence; (2) the ALJ improperly relied on her lay opinion in formulating Plaintiff's RFC; and (3) the ALJ failed to properly evaluate Plaintiff's credibility (Docket No. 10-1 at 12, 16, 20). For the reasons that follow, Plaintiff's arguments are unavailing.

14. Plaintiff's medical records reveal that she had several medical conditions.

15. Plaintiff was diagnosed with hepatitis C and began treatment with the drug Harvoni on January 15, 2015. (R. at 343.) By March 2, 2015 her viral load was undetectable (R. at 566), and there is no further evidence in the record of problems associated with hepatitis C.

16. Plaintiff additionally suffered from cirrhosis of the liver. On December 19, 2014, she was hospitalized with shortness of breath and increased abdominal girth. (R. at 263.) 4 liters of ascites (fluids) were removed, secondary to cirrhosis of the liver. (R. at 263.) She was readmitted on December 23, 2014, and more fluid was removed. (R. at 320.) Tiny hepatic cysts associated with cirrhosis were observed on September 15, 2015. (R. at 1037.) She discussed the possibility of a liver transplant with Susan Kreppel, a Nurse Practitioner, but on October 13, 2015, she declined to go on a transplant list, due to her MELD score[3] of 8, and to the fact that she was moving to a new home at the time. (R. at 826.) A CT scan on January 20, 2017 showed cirrhosis of the liver with a focal cyst within the left hepatic lobe. (R. at 1058.) The same CT scan also revealed a few small cysts within Plaintiff's right kidney and central canal stenosis of her spinal cord. (R. at 1058.)

17. Plaintiff's gallbladder was removed on May 28, 2015, due to acute cholecystitis. (R. at 1062.) Plaintiff underwent surgery to repair an umbilical hernia on March 4, 2016. (R. at 805.) She had a second hernia surgery on March 3, 2017, from which she was recovering at the time of the hearing. (R. at 40-41.)

---

[3] "A MELD score is a number that ranges from 6 to 40, based on lab tests. It ranks your degree of sickness, which shows how much you need a liver transplant. The higher the number, the more urgent your case is." https://www.webmd.com/hepatitis/meld-score-for-liver-disease#1, accessed 11/1/2019.

18. Plaintiff also experienced thumb symptoms. She underwent a "tendon transfer" procedure to her left thumb in 2011. (R. at 570.) On March 21, 2012, Dr. Lanighan assessed her left thumb at a 50% "Schedule Loss of Use," apparently as part of a Workers' Compensation claim. (R. at 579.) On January 17, 2014, she underwent APL tenotomy on her right thumb (R. at 592.) At a follow-up visit, Dr. Frank Domnisch noted that "[p]atient is doing very well in regards to her right hand. She may continue to bear weight about the right hand as tolerated without restriction." (R. at 598.) Dr. Domnisch also noted that Plaintiff had "full, smooth painless range of motion about the wrist and digits all planes." Id. Plaintiff was released to work with no restriction on February 17, 2014. (R. at 599.) On January 27, 2015 Dr. Domnisch stated that Plaintiff occasionally used a brace, and that "due to the stiffness and pain I would estimate her scheduled loss of use 25% loss of use of the [right] thumb." (R. at 601.) At her hearing, Plaintiff stated that she did not have follow-up treatment for her thumbs and that "[it was] basically her vision problems that kept [her] from working." (R. at 41.)

19. Plaintiff reported shoulder pain at an appointment on January 22, 2016. (R. at 950.) On April 16, 2016, at an appointment where she reported that the shoulder pain caused her difficulty sleeping, Dr. Rifat Saddiq noted moderate limitations in range of motion and mild a.c. joint degenerative changes. (R. at 785.) Plaintiff also experienced back problems: on November 20, 2015, she reported lower lumbar pain after cleaning, and the doctor noted a stiff gait, though by December 18, 2015 she had a normal gait again (R. at 944, 949.) A CT scan for abdominal pain on January 20, 2017 disclosed degenerative changes at the L3-L4 disc level in her back. (R. at 1059.) Plaintiff did not receive treatment for her back. (R. at 41.)

20. At her hearing, Plaintiff testified that it was her vision problems that kept her from working. (R. at 41.) She did not wear glasses to the hearing. (R. at 40.) She testified that she stopped working in 2014 due her vision problems. (R. at 39.) Plaintiff was diagnosed with retinitis pigmentosa on March 17, 2015. (R. at 996.) She had cataract surgery on her right eye on March 10, 2015, and on her left eye on March 24, 2015. (R. at 708.) On April 3, 2015, her visual acuity was 20/40 with her right eye, and 20/30 with her left eye. (R. at 709.) Plaintiff underwent Yag laser capsulometry on her right eye on October 1, 2015 at Ross Eye Institute, to improve on the cataract surgery. (R. at 993.) Plaintiff declined Yag capsulometry for her left eye on November 13, 2015. (R. at 730.) On October 7, 2016, Dr. Susan Everett's notes show Plaintiff with uncorrected vision of 20/40 in her right eye, and 20/30 in her left eye, though her distance vision with glare was 20/100 in each eye. (R. at 725.) Plaintiff was to follow up regarding her retinitis pigmentosa in one year. (R. at 727.) At an appointment at the Ross Eye Institute on April 5, 2017, her vision was 20/40 and 20/30, and mention was made of her retinal degeneration. Her prescription was for "readers only." (R. at 1893.)

21. Plaintiff additionally submitted medical opinions regarding her ability to work, two of which are at issue here. Plaintiff argues that the ALJ erred in improperly considering the medical opinions of Nurse Practitioner Susan Kreppel and Dr. Donna Miller.

22. An ALJ must give controlling weight to a treating physician's medical opinion when it is "well[ ] supported by medically acceptable clinical and laboratory techniques and is not inconsistent with the other substantial [record] evidence." 20 C.F.R. § 404.1527(c)(2). The deference accorded to a treating physician's opinion may be reduced

upon consideration of other factors, including the length and nature of the treating doctor's relationship with the patient, the extent to which the medical evidence supports the doctor's opinion, whether the doctor is a specialist, the consistency of the opinion with the rest of the medical record, and any other factors "which tend to ... contradict the opinion." 20 C.F.R. § 404.1527(c)(2)(i)-(ii) and (c)(3)-(6); see also Micheli v. Astrue, 501 F. App'x 26, 28 (2d Cir. 2012).

23. In weighing the opinions of "other sources," such as nurse practitioners, the ALJ must use the same factors as he or she uses for the evaluation of opinions from other medical sources enumerated in 20 C.F.R. 404.1527(c). Canales v. Comm'r of Soc. Sec., 698 F.Supp.2d 335, 344 (E.D.N.Y.2010); see also Saxon v. Astrue, 781 F. Supp. 2d 92, 104 (N.D.N.Y. 2011).

24. On March 2, 2015, Susan Kreppel, a gastroenterology nurse practitioner, assessed Plaintiff's functioning with a Medical Source Statement. (R. at 721.) Using a "check-the-box" form, Ms. Kreppel indicated that she had treated Plaintiff from December 23, 2014, to the present, a period of three months (R. at 719.) She indicated that Plaintiff could stand and walk 0-2 hours of an eight-hour day, could sit three out of eight hours, and needed a job that permitted shifting positions at will from sitting, standing or walking. (R. at 720.) Ms. Kreppel opined that Plaintiff did not have significant limitations with reaching, fingering and handling, (R. at 720), and stated that Plaintiff's pain would only rarely be severe enough to interfere with the attention needed to perform simple work tasks. (R. at 721.) Ms. Kreppel opined, with no explanation, that Plaintiff was likely to be absent from work "more than four days per month" as a result of her impairments or treatment. (R. at 721.)

25.     The ALJ gave "minimal weight" to Ms. Kreppel's opinion on the grounds that the evidence does not corroborate the limitations Ms. Kreppel found, and that Ms. Kreppel did not explain or support her findings, which differ from her own notes. The ALJ remarked that "it was not clear on what basis the claimant would require excessive absences," noting the lack of corroboration for Ms. Kreppel's estimate of more than four absences per month. (R. at 23.)  The ALJ specifically noted the discrepancy between Ms. Kreppel's March 2, 2015, opinion limiting Plaintiff to 0-2 hours per day of standing and walking, and her treatment note from the same day observing that "Plaintiff walks with normal gait and station." (R. at 567.) Plaintiff argues that it was error to discount this opinion without first re-contacting Ms. Kreppel to clarify her opinion that Plaintiff would be absent more than four days of work per month. (Docket No. 10-1 at 14.) Defendant argues that Ms. Kreppel's opinion was uncorroborated by the medical evidence and that the ALJ was not obligated to recontact Ms. Kreppel. (Docket No. 18-1 at 19.) This Court agrees with Defendant.

26.     Ms. Kreppel's opinion that Plaintiff could not stand or walk more than 2 hours per day contradicts her treatment notes from the same day, undermining the basis for her finding.  Further, Ms. Kreppel provided no explanation of why Plaintiff might need to miss more than four days per month, especially when Ms. Kreppel stated on the same form that Plaintiff rarely experienced pain that interfered with attention and concentration. In addition to these contradictions, at the time Ms. Kreppel filled out the form, she had only treated Plaintiff for a few weeks, solely in the context of a serious liver episode. Thus, the "length, nature, and extent of the treatment relationship" did not compel the ALJ to give Ms. Kreppel's opinion weight.  See Torbicki v. Berryhill, No. 17-CV-386(MAT), 2018

10

WL 3751290, at *2 (W.D.N.Y. Aug. 8, 2018) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c); Social Security Rulings ("SSR") 06-03p and 96-2p). For all these reasons, the ALJ did not err in giving little weight to Ms. Kreppel's opinion.

27.	Dr. Donna Miller saw the Plaintiff for a disability examination on March 18, 2015. (R. at 690-93.) Plaintiff's gait was normal, and she used no assistive devices. (R. at 691.) Plaintiff's vision was 20/70 in both eyes, and 20/30 at 20 feet with glasses. Id. Dr. Miller noted a full range of motion of Plaintiff's shoulders, elbows, hips, knees, and ankles. She noted no abnormality in Plaintiff's thoracic spine, full flexion and extension of Plaintiff's lumbar spine, and full rotary movement bilaterally. (R. at 692.) Plaintiff had grip strength in her hands of 5/5 bilaterally. (R. at 693.) Dr. Miller diagnosed Plaintiff with hepatitis C, cirrhosis of the liver, chronic kidney disease (by history), hypertension, hypothyroidism, history of renal cysts, history of pancreatic cysts, and bilateral cataracts status post right cataract surgery. (R. at 693.) Dr. Miller opined that Plaintiff had "no physical limitation." Id.

28.	The ALJ gave some weight to Dr. Miller's opinion, noting that Dr. Miller based her findings on her physical examination. Plaintiff argues that Dr. Miller's opinion was stale, because it failed to address conditions that worsened after the examination date. Defendant argues that the record does not show a significant deterioration in Plaintiff's symptoms that would render Dr. Miller's opinion stale.

29.	"The mere passage of time does not render an opinion stale. Instead, a medical opinion may be stale if subsequent treatment notes indicate a claimant's condition has deteriorated." Whitehurst v. Berryhill, 2018 WL 3868721, *4 (W.D.N.Y.

2018); Nau v. Berryhill, No. 1:17-CV-00703(JJM), 2018 WL 5993367, at *2 (W.D.N.Y. Nov. 15, 2018).

30. Here, the record shows that Plaintiff's hepatitis C was fully controlled, and she did not experience a recurrence of the ascites that required hospitalization in 2014. Her MELD score of 8 in October 2015 does not indicate deterioration of her liver. She was eligible to stop Lasix in January 2016, because there was "no evidence of recurrent ascites." (R. at 820.) She testified at her hearing that she had not sought additional treatment for her thumbs following her surgery. She additionally testified that she was not receiving treatment for her back, and did not know of her back problem until the CT scan revealed it. (R. at 41.) Dr. Miller's opinion of no physical limitations therefore does not appear to have become stale on this front.

31. Plaintiff testified that her vision was deteriorating, (R. at 40), and records from Ross Eye Institute on April 5, 2017 refer to "retinal degeneration." (R. at 1893.) However, Plaintiff's vision on April 5, 2017, was 20/30 and 20/40, (R. at 1893), a seeming improvement from the 20/70 Dr. Miller observed in 2015. (R. at 691.) Additionally, Plaintiff testified that she pursued crafts and painted, and apparently still drove during the day. (R. at 45, 1891.) None of these subsequent facts indicates that Dr. Miller's opinion was stale, or that the ALJ erred in giving it some weight.

32. Plaintiff also argues that the ALJ erred in substituting her own, lay opinion after rejecting Ms. Kreppel's opinion. However, the law provides that an ALJ is permitted to assess RFC when the record contains enough evidence from which an RFC can be determined. See Tankisi v. Comm'r of Soc. Sec., 521 F. App'x 29, 34 (2d Cir. 2013) (summary order). The Plaintiff has the burden of proving that he or she is disabled, and

of furnishing evidence of his or her disability. See 20 C.F.R. § 404.1512(a); 42 U.S.C. § 423(d)(5)(A). An ALJ who bases his or her RFC determination on a complete medical record is not required to seek additional medical information regarding a plaintiff's RFC. See Rosa, 168 F.3d at 79 n.5 ("[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information.") (internal quotation marks omitted).

33. Here, the ALJ considered an abundant record, and the record supports her RFC determination. The record contains multiple findings that Plaintiff had normal gait and station. (See, e.g., R. at 1013, 1017, 1893 (Plaintiff "denies" musculoskeletal and neurological issues).) Plaintiff's hepatitis C was in remission, and she was not hospitalized after 2014 for her cirrhosis. Plaintiff had a MELD score of 8 in October 2015, (R. at 1018, 1020), and no evidence of recurrent ascites in January 2016. (R. at 820.) Her retinitis pigmentosa required only annual check-ups and she decided not to pursue Yag capsulometry on her left eye. (R. at 730.) Her uncorrected vision was 20/40 and 20/30 on April 5, 2017. (R. at 1893.) She engaged in painting and crafts, suggesting that her thumb deficits, while present, did not make her incapable of using her hands. (See R. at 45.) She did not pursue treatment for her back problems. (See R. at 41.)

34. This Court therefore finds that the ALJ properly considered the evidence before her, and that her opinion is supported by substantial evidence.

35. Finally, Plaintiff argues that the ALJ improperly assessed her credibility. Plaintiff argues that the ALJ improperly relied upon her activities of daily living in finding that her "testimony …appear[s] disproportionate to the medical evidence." (R. at 21.) In assessing the credibility of a claimant's subjective complaints, the Commissioner's

regulations require ALJs to employ a two-step inquiry. Meadors v. Astrue, 370 F. App'x 179, 183 (2d Cir. 2010). "First, the ALJ must determine whether the claimant suffers from a 'medically determinable impairment[ ] that could reasonably be expected to produce' " her symptoms. Id. (quoting 20 C.F.R. § 404.1529(c)(1)). "Second, the ALJ must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." Id.

36. "The law is clear that the ALJ may consider ... [a claimant's] purported activities of daily living for the purposes of a credibility determination." Cahill v. Astrue, No. 1:11-CV-148, 2012 WL 3777072, at *5 (D. Vt. Aug. 29, 2012). Indeed, the Commissioner's regulations expressly identify "daily activities" as a factor the ALJ should consider in evaluating the intensity and persistence of a claimant's symptoms. See Coger v. Comm'r of Soc. Sec., 335 F. Supp. 3d 427, 435–36 (W.D.N.Y. 2018), citing 20 C.F.R. § 416.929(c)(3)(i). In considering activities of daily living, "[t]he issue is not whether the clinical and objective findings are consistent with an inability to perform all substantial activity, but whether plaintiff's statements about the intensity, persistence, or functionally limiting effects of his symptoms are consistent with the objective medical and other evidence." Morris v. Comm'r of Soc. Sec., No. 5:12-CV-1795 MAD/CFH, 2014 WL 1451996, at *6 (N.D.N.Y. Apr. 14, 2014). "One strong indication of credibility of an individual's statements is their consistency, both internally and with other information in the record." Coger, 335 F. Supp. 3d at 435–36.

37. Plaintiff also takes issue with the ALJ's observation that "finances appear to be a large impetus" in Plaintiff's claim. (R. at 22.) Plaintiff argues that the statement is

14

both irrelevant to the disability determination and "an inappropriate insinuation about Plaintiff's character." (Docket No. 10-1 at 24.)

38. While the relevance of the comment is unclear, nothing indicates that the ALJ meant it to disparage Plaintiff's character. In fact, Plaintiff concedes that the assertion is a basic truth that underlies all disability applications. (Docket No. 10-1 at 23.) ("It is unclear when finances would *not* be an impetus in a social security disability case.") (emphasis in original)

39. Moreover, the ALJ's comment about finances does not appear to have influenced the ALJ's decision. Regardless of what the ALJ meant by her comment, the relevant question is whether her decision is supported notwithstanding the comment. "Where application of the correct legal principles to the record could lead only to the same conclusion, there is no need to require agency reconsideration." Zabala v. Astrue, 595 F.3d 402, 409 (2d Cir. 2010) (alterations omitted) (quoting Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987); Ortiz v. Colvin, 298 F. Supp. 3d 581, 590 (W.D.N.Y. 2018).

40. Here, the ALJ properly found that Plaintiff's claims regarding her symptoms were inconsistent with the other evidence of record, including her own reports of her activities of daily living. Despite Plaintiff's claim that she could not balance, walk, or see the walls in her house, she reported that she could do chores, crafts, and painting, and could shop. She also appears to have been able to garden and to drive, albeit with some restrictions. (R. at 1891.) These activities are inconsistent with the severity of symptoms Plaintiff claimed. See Rusin v. Berryhill, 726 F. App'x 837, 840 (2d Cir. 2018) (severe limitations claimed by the plaintiff were inconsistent with the plaintiff's report that he "cooked simple meals daily, left the house daily, can drive, and shopped for groceries

every two weeks"). This Court finds that the ALJ's credibility determination is thus free from error.

**CONCLUSION**

For the foregoing reasons, this Court finds that substantial evidence supports the ALJ's determination. Therefore, remand is not warranted.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 10) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 18) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:    November 24, 2019
              Buffalo, New York

                                        s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                      United States District Judge